George AMES d/b/a George's Texaco, Plaintiff Counter-Defendant,

v.

TEXACO, INC., a Delaware corporation, Defendant,

and

Blarney Castle Oil Co., a Michigan corporation, and Dennis E. McCarthy, Defendants and Counter-Plaintiffs.

No. G82–918 CA7.

United States District Court, W.D. Michigan, S.D.

June 21, 1983.

---

Oehmke & Richardson by Thomas H. Oehmke, Detroit, Mich., Kowalski, Wadel & Bulger by John R. Bulger, Ludington, Mich., for plaintiff counter-defendant.

James C. Conboy, Jr., Cheboygan, Mich., for Blarney Castle Oil and McCarthy.

G. Kenneth Handley, White Plains, N.Y., Lawrence M. Scoville, Jr., Detroit, Mich., for Texaco, Inc.

## OPINION RE: MOTIONS TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

HILLMAN, District Judge.

Plaintiff brought this action for injunctive relief and damages under the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 et seq., and various unspecified antitrust statutes. The matter is presently before the court on defendants' motions to dismiss or, in the alternative, for summary judgment. The court will address these motions jointly.

### I. DISCUSSION

A. *Facts.*

Plaintiff, George Ames, operated a gas station known as "George's Texaco" in Mason County, Michigan, from May 15, 1972, until April 1, 1979. Plaintiff allegedly leased this property from defendant Dennis E. McCarthy (hereinafter "McCarthy") until October, 1978, when McCarthy sold the leasehold to Richard Genter. Plaintiff continued to operate the gas station until April 1, 1979.

During this entire period, plaintiff obtained oil products from defendant Blarney Castle Oil Company (hereinafter "Blarney Castle"), a distributor of products manufactured by defendant Texaco, Inc. (hereinafter "Texaco"). Apparently, plaintiff continued to receive oil products from Blarney Castle until April 1, 1979, when the "franchise" between plaintiff and Texaco was allegedly "terminated." Plaintiff brought this action on December 8, 1982.

Plaintiff claims that under the provisions of the Petroleum Marketing Practices Act,

15 U.S.C. § 2801 et seq., (hereinafter "the Act") a "franchise relationship" existed between plaintiff and "refiner Texaco or distributor Blarney Castle, or both," and that plaintiff's gas station was a "leased marketing premises," as defined by the Act. See 15 U.S.C. § 2801.1(B)(i). Plaintiff claims that McCarthy is a distributor of motor fuel affiliated with Blarney Castle, and that McCarthy "permitted defendant Blarney Castle to exercise control over the leased marketing premises which plaintiff Ames was authorized ... to employ in connection with the sale ... of motor fuel under the franchise with Defendants. ..."

Plaintiff maintains that when McCarthy sold the property to Genter in October, 1978, he effectively terminated the franchise without properly notifying plaintiff at least 90 days in advance of the alleged termination as required by section 2804(a) of the Act. In addition, plaintiff claims that Texaco terminated his "franchise" on April 1, 1979, without notifying him 90 days in advance thereof.

Blarney Castle concedes that a "rental agreement" existed between itself and the plaintiff wherein plaintiff agreed to pay Blarney Castle 0.2% per gallon for all gas sold on the premises or $225.00, whichever was greater. Blarney Castle has counterclaimed against plaintiff seeking $3,376.69 still allegedly due Blarney Castle for "said rental and purchase of products."

Defendants have filed motions to dismiss or, in the alternative, for summary judgment, claiming that plaintiff's claims are barred by the one-year statute of limitations contained in the Act, 15 U.S.C. § 2805(a). Plaintiff states that defendants are committing "continuing violations" thereby tolling the running of the limitations period.

Plaintiff also asserts certain antitrust claims against defendants, Blarney Castle and McCarthy, which defendants have challenged. Plaintiff maintains that Blarney Castle operated certain retail stations within the "same relevant geographic product market area" as plaintiff's station and that

**1320**

they were in "direct competition." Plaintiff states that Blarney Castle sold gas to its customers at retail prices which were less than the wholesale prices it charged to plaintiff. Plaintiff claims that "this tended to substantially lessen competition in Mason County among competing petrol dealers with respect to retail gas sales and directly harmed plaintiff by a loss of sales revenues."

Finally, plaintiff claims that McCarthy sold the "leased marketing premises" with the specific intent to injure the plaintiff and to "monopolize" the retail gas business in the relevant geographic market.

Defendants claim that plaintiff's purported antitrust claims are time-barred by the four-year statutes of limitations generally applicable to federal antitrust claims. *See* 15 U.S.C. § 15b.

### B. *Petroleum Marketing Practices Act.*

The question raised by defendants' motions is whether plaintiff's claims under the Act are barred by the running of the statute of limitations. The legislative history reveals that the Act was created to provide:

> "a single, uniform set of rules governing the grounds for termination and nonrenewal of motor fuel marketing franchises and the notice which franchisors must provide franchisees prior to termination of a franchise or nonrenewal of a franchise relationship."

S.Rep. No. 95–731, 95th Cong., 1st Sess. 119, *reprinted in* [1978] U.S.Code Cong. & Ad. News 873, 877. The Act permits termination or nonrenewal of a franchise provided the notification requirements of section 2804 are met. Section 2804(a)(2) of the Act provides as follows:

> "(a) Prior to termination of any franchise or nonrenewal of any franchise relationship, the franchisor shall furnish notification of such termination or such nonrenewal to the franchisee who is a party to such franchise or such franchise relationship—

> \* \* \* \* \* \*

> (2) except as provided in subsection (b) of this section, not less than 90 days prior to the date on which such termination or nonrenewal takes effect."

Plaintiff claims that in October, 1978, McCarthy terminated or failed to renew plaintiff's lease without giving plaintiff proper notice. Plaintiff further claims that in April, 1979, defendants, Texaco and/or Blarney Castle, violated section 2804 of the Act by terminating or failing to renew plaintiff's supply agreement, giving plaintiff "less than 24 hours notice thereof."

Defendants contend that plaintiff's claims under the Act are barred by the one-year statute of limitations contained in 15 U.S.C. § 2805(a), which provides in part:

> "(a) If a franchisor fails to comply with the requirements of section 2802 or 2803 of this title, the franchisee may maintain a civil action against such franchisor ... except that no such action may be maintained unless commenced within one year after the later of—

> (1) the date of termination of the franchise or nonrenewal of the franchise relationship; or

> (2) the date the franchisor fails to comply with the requirements of section 2802 or 2803 of this title."

Plaintiff filed this action in December, 1982. The dates of termination and nonrenewal alleged in plaintiff's complaint are October, 1978, for defendant McCarthy, and April, 1979, for defendants Texaco and Blarney Castle. Thus, measuring from the latest possible date, which, under section 2805(a) would be the final termination of the "franchise" on April 1, 1979, plaintiff's claims under the Act should have been filed on or before April 1, 1980.

Plaintiff maintains, however, that a proper construction of section 2805(a) is that "an action may be commenced within one year after the failure to give the required notices under the Act has *ended.*" (Emphasis added.) Plaintiff argues, in effect, that defendants' alleged failure to comply with the notice requirements of the Act tolls the running of the statute of limitations until the noncompliance is "cured."

In general, Congress does not impose statutory time limitations on the enforcement of federally-created rights. *Saffron v. Dept. of the Navy,* 561 F.2d 938 (D.C.Cir. 1977). Consequently, when Congress has prescribed a particular limitation period, "its mandate must be obeyed." 561 F.2d at 941. As the Supreme Court has stated:

> "If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitations is definitive."

*Holmberg v. Armbrecht,* 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946).

Statutes of limitations generally begin to run upon the happening of the event which gives rise to the plaintiff's claim. *See Riley v. United States,* 212 F.2d 692 (4th Cir.1954). The Supreme Court has held that a cause of action accrues and, accordingly, that the limitations period begins to run on the date that the injury complained of occurs. *Zenith Radio Corp. v. Hazeltine,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). Courts, however, should not resort to technical definitions of the word "accrued," but should interpret that term "in light of the general purposes of the statute and of its other provisions, and with regard to those practical ends which are to be served by any limitation of the time within which an action must be brought." *Reading Co. v. Koons,* 271 U.S. 58, 62, 46 S.Ct. 405, 406, 70 L.Ed. 835 (1926); *Jacobson v. Peat, Marwick, Mitchell & Co.,* 445 F.Supp. 518 (S.D.N.Y.1977).

While one purpose of the Act is to protect the reasonable expectations of the "franchisee" in the continuation of a motor fuel franchise relationship, the legislative history also discloses that Congress intended to recognize the "legitimate needs of a franchisor to be able to terminate a franchise or not renew a franchise relationship ... upon certain changes in circumstances," and to provide "flexibility so that franchisors may initiate changes in their marketing activities to respond to changing market conditions and consumer preferences." S.Rep. No. 95–731, 95th Cong., 1st Sess. 19, *reprinted in* [1978] U.S.Code Cong. & Ad.News 873, 877.

The court concludes that section 2805(a)'s one-year limitation enhances the attainment of these objectives by assuring that disputes arising from the termination or nonrenewal of a franchise relationship will be resolved swiftly. This is in line with the settled policy that limitations periods are created to "encourage persons promptly to file legal claims in order to prevent unfair litigation on stale and forgotten matters." *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974); *NLRB v. Cal. School of Professional Psychology,* 583 F.2d 1099, 1101 (9th Cir. 1978).

Plaintiff relies on an exception to the general rule that the occurrence of an injury starts the running of the appropriate limitations period. This so-called "exception" provides that new causes of action arise from the defendant's subsequent commission of several prohibited acts that cause damage to another party's business. *See Julius Nasso Concrete Corp. v. DIC Concrete Corp.,* 467 F.Supp. 1016 (S.D.N.Y. 1979). Stated differently, the statute of limitations is construed to run from each of a series of wrongful acts in the course of a "continuing conspiracy." *In re Multidistrict Vehicle Air Pollution,* 591 F.2d 68 (9th Cir.1979). Consequently, the issue in the instant case becomes whether plaintiff's alleged injury is the "result of multiple wrongs or of a single irrevocable and permanent injury." 591 F.2d at 71.

The facts of this case are not unlike those in *In re Multidistrict Vehicle Air Pollution, supra,* where the plaintiff brought suit under section 4 of the Clayton Act, 15 U.S.C. § 15. Defendant asserted the four-year statute of limitations contained in 15 U.S.C. § 15b. Holding in favor of the defendant, the court stated that the plaintiff's position:

> "resembles that of a disappointed patron of the theatre. When turned away from the theatre at 8 o'clock because the performance is sold out, his exclusion occurs

at eight, not during the performance or when it concludes at eleven o'clock." 591 F.2d at 71.

Similarly, the Fifth Circuit, in *Poster Exchange, Inc. v. Nat'l Screen Service, Inc.,* 517 F.2d 117, 127 (5th Cir.1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 784, 46 L.Ed.2d 643 (1976), stated:

"Where the violation is final at its impact, for example, where the plaintiff's business is immediately and permanently destroyed, or where an actionable wrong is by its nature permanent at initiation without further acts, then the acts causing damage are unrepeated, and suit must be brought within the limitations period and upon the initial act."

517 F.2d at 128.

■ I find that plaintiff's claims against defendants in the instant case arose from the defendants' alleged failure to provide plaintiff with notification at least 90 days in advance of the termination or nonrenewal of plaintiffs' lease and "franchise relationship." The alleged violation of plaintiff's right to notice under the Act had its final impact on plaintiff's business in October, 1978, due to the alleged conduct of defendant McCarthy, and in April, 1979, due to that of defendants, Blarney Castle and Texaco. It was then incumbent upon the plaintiff to bring suit within the one-year limitations period provided in section 2805(a). His failure to do so forever bars him from asserting his rights under the Act against these defendants.

### C. *Antitrust Claims.*

Plaintiff also asserts certain antitrust claims against defendants Blarney Castle and McCarthy. Plaintiff maintains that Blarney Castle engaged in "price discrimination," and that McCarthy attempted to "monopolize" retail gas sales.

■ The court concludes that plaintiff's "antitrust" claims against Blarney Castle and McCarthy are vague and fail to set forth sufficient factual allegations to permit the court to scrutinize them in light of defendants' motions. Presumably, plaintiff's claim of price discrimination against

Blarney Castle is based on the Robinson-Patman Antidiscrimination Act, 15 U.S.C. § 13(a), (b) and (e), but plaintiff has not cited this provision nor alleged a specific time frame within which defendants' allegedly illegal activity occurred. In addition, the court notes that plaintiff alleges that Blarney Castle "sold" gas at cheaper prices to gas stations "owned and operated" by Blarney Castle itself. It is settled law, however, that there can be no "sale" under the Robinson-Patman Act unless parties are "dealing at arms-length," and are in a "seller-purchaser relationship." *Brewer v. Uniroyal Corp., Inc.,* 498 F.2d 973, 977 n. 2 (6th Cir.1973); *Reines Distributors, Inc. v. Admiral Corp.,* 256 F.Supp. 581 (S.D.N.Y.1966).

■ Plaintiff's claims against defendant for "monopolization" appear to be founded upon section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2. Plaintiff's complaint, however, is without any allegations in support of the two elements which are necessary to state a claim for monopolization under the Sherman Act, namely: "1) possession of monopoly power in the relevant product and geographical market; and 2) the wilful acquisition or maintenance of that power." *United States v. Grinnel Corp.,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966).

■ In view of the foregoing, I find that plaintiff has failed to state claims upon which relief may be granted against defendants Blarney Castle and McCarthy for antitrust violations. Hence, I do not reach at this juncture, defendants' arguments that plaintiff's antitrust claims are barred by the statute of limitations contained in 15 U.S.C. § 15b.

■ It is generally held, however, that a plaintiff "should be given a chance to amend a complaint which fails to state a claim upon which relief can be granted." Interim Binder, *Fed Proc., L.Ed.* § 62:470 at 395; *Davis v. Piper Aircraft Corp.,* 615 F.2d 606 (4th Cir.1980), *cert. dismissed,* 448 U.S. 911, 101 S.Ct. 25, 65 L.Ed.2d 1141 (1980); Fed.R.Civ.P. 15(a). Accordingly, if plaintiff is satisfied he has facts sufficient to state a federal antitrust claim against defendants Blarney Castle and McCarthy,

he shall have twenty (20) days from the date of this opinion to file an amended complaint.

## II. CONCLUSION

Accordingly, for the reasons stated, defendants' motions to dismiss, or in the alternative, for summary judgment on plaintiff's claims under the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.*, are hereby granted, and plaintiff's claims under the Act are hereby dismissed with prejudice.

In addition, plaintiff shall have twenty (20) days from the date of this opinion to amend that portion of his complaint which alleges federal antitrust claims against defendants Blarney Castle and McCarthy.